By the Court.
In this case the circuit court found the following facts:
“First: The defendant, The Lake Shore ,& Michigan Southern Railway Company, was. before the commencement of this action, organized by the consolidation of The Junction Railroad Company, and other railroad companies, and at the time of the commencement of this action, was existing under and by virtue of the laws of the state of Ohio, and owned and operated a railroad extending from Cleveland, Ohio, to Chicago, Illinois, which railroad passes .through the village and township of Amherst, Lorain county, Ohio, and said defendant company has owned and operated said railroad continuously for more than thirty years last past.
“Second: That said Junction Railroad Company was incorporated under an act entitled, ‘An act to incorporate the Junction Railroad Company’ *500 enacted by the general assembly of the state of Ohio, on the 2nd.day of March, A. D. 1846; that the 7th section. of said act, provides as follows:
“ ‘Sec. 7. That the directors shall have power to determine the number and kind of tracks, turnouts, branches, carriages, conveyances, storehouses, depots and other fixtures and machinery, prescribe the mode of transportation, and have power to construct a single or double track railroad.’
“That there was no other provision in said act or any of the amendments thereto providing for the number of tracks that said railroad company might - construct.
“Third: The plaintiff, during the years 1867, 1872 and 1873, acquired title to a -farm consisting of about one hundred and twelve (112) acres of land situated in the' township of Amherst, county of Lorain, and state of Ohio, and ever since said dates has been, and still is, the owner of said farm.
“Fourth: The said Junction Railroad Company, the predecessor of the defendant, The Lake Shore & Michigan Southern Railway Company, prior to 1867 procured from Frederick Onstine and Daniel Onstine the right to use for railroad purposes a right of way not to exceed one hundred (100) feet in width, over and across the land which was owned by the plaintiff, Joseph R. Miller, at the time of the commencement of this action, and prior to the year 1869 said railroad company had constructed a single main track over and along said right of way.
“Fifth: The defendant, The Lake Shore & Michigan Southern Railway Company, after the year 1869 and prior to the 3rd day of May, 1889, *501 constructed one additional main track and one side track over and along its right of way over the plaintiff’s, said land, so that on the 3rd day of May, 1889, said defendant railway company had two main tracks and one or more side tracks over and along its right of way across said plaintiff’s said land, which said tracks extended in an easterly and westerly direction.
“Sixth: The highway leading past said plaintiff’s said farm extended along the south side thereof about thirty (30) rods southerly and nearly parallel to the right of way of the defendant, The Lake Shore & Michigan Southern Railway Company, aforesaid, and the plaintiff’s residence was, on the 3rd day of May, 1889, and still is situated on the north side of the said right of way of the defendant company and about thirty (30) feet north of the north line of said right of way; that at said last-named date and continuously thereafter until the present time, the said plaintiff’s, natural and most convenient means of access to his residence and farm buildings (which farm buildings were on the north side of- sáid railroad track) was by a private way across his land and across the defendant’s right of way and railroad tracks.
“Seventh: On the said 3rd day of May, 1889, the defendant railway company was desirous of purchasing from the plaintiff, a strip of land on the south side of its right of way for the purpose of constructing thereon other side tracks and at that time there was a proceeding pending in the probate court of Lorain county, Ohio, wherein the defendant herein, .The Lake Shore & Michigan *502 Southern Railway Company, was plaintiff, and the plaintiff herein, Joseph R. Miller, was defendant, whereby the said defendant railway company sought to appropriate said strip of land. That for the purpose of settling said case and to induce the plaintiff herein, Joseph R. Miller, to convey said strip of land to said defendant, The Lake Shore & Michigan Southern Railway Company, the said railway company promised and agreed, among other things, that it would construct no more tracks on the north side of its main track as it then existed so long as said house was occupied as a dwelling house; and thereupon said entire agreement was put in writing and embodied in a deed given by said plaintiff herein to said defendant, The Lake Shore & Michigan Southern Railway Company, which said contract and deed is in words and figures following, to-wit: .
“ ‘This indenture, made the 3rd day of May, in the year of our Lord, one thousand eight hundred and eighty-nine, between Joseph R. Miller and Helen A. Miller, his wife, of the township of Amherst, in the county, of Lorain and state of Ohio, the grantors, and The Lake Shore & Michigan Southern Railway Company, the grantee,
“ ‘Witnesseth: That the said grantor, for and in Consideration of the sum of one thousand ($1,000.00) dollars, lawful money, to him in hand paid by the said grantee at or before the ensealing and delivery of these presents, the receipt whereof is hereby confessed and acknowledged, has granted, bargained, sold, released and confirmed, and by these presents does grant, bargain, sell, release and confirm unto the said grantee, and to its?' *503 successors and assigns forever: All that certain piece or parcel of land, situate in the township of Amherst, county of Lorain, and state of Ohio and bounded and described as follows, to-wit:
“ ‘Being part of lots 98 and 3, in Amherst township, Lorain county, Ohio, and beginning in the south line of right of way of The Lake Shore & Michigan Southern Railway and in the west line of lands of Joseph R. Miller; thence southerly along said west line to a point 30 feet southerly from said right of way line, measured at right angles thereto; thence easterly 485 6-10 feet to a point 15 feet southerly from said right of way line measured at right angles thereto; thence easterly 200 5-10 feet to said south line of right of way; thence westerly along said south line of right of way 676 6-10 feet to the place of beginning, and containing 283-1000 of an acre more or less.
“ ‘It is also stipulated and agreed between the parties hereto as a part of the consideration for this conveyance:
“ ‘1st. That the grade at the top of the rail at Miller’s farm crossing when the improvement is completed shall not be lowered more than four (4) feet.
“ ‘2nd. That there shall be no tracks north of the present tracks in front of Miller’s house while said house is occupied as a dwelling except as may be necessary in the work of excavation for the change of grade.
“ ‘3rd. That when the work is finished the quarry switch tracks shall not connect with the main track east of the corporation line, and the *504 present quarry track on the south side shall be .taken out and connected west of the corporation line.
“ ‘4th. That said company shall construct a good farm crossing for temporary use at some suitable place on Miller’s land east of the present one and before disturbing Miller’s present crossing, and said Miller shall consent and does hereby consent to the vacation of his present crossing for a period not exceeding one year after the present crossing is taken up. And said Miller agrees during this time to use the crossing provided for temporary use. When the change of grade is finished and within one year from the removal of his present crossing said company shall immediately construct and maintain a good farm crossing at the site of the present one, or at a place within one hundred (100) feet east thereof as said Miller may direct, with approaches of one foot rise to fifteen feet horizontal upon its right of way, and if necessary to make the approaches of the grade mentioned it may cut upon the land of Miller.
“ ‘5th. That the company will so make its excavation for change of grade that the land of Miller will not be damaged by sloughing off.
“ ‘6th. That the sod on the right of way between Miller’s house and the tracks shall not be removed by said company except as much as may be necessary in excavating for the change of grade, and after the improvement is completed said company shall restore the cut to a uniform sl’opé and leave the banks in as good condition as may be considering the nature of the work done.
“ ?The land hereby conveyed is showed by lines marked A, B, C and D on plat hereto attached and *505 made a part hereof, but subject to all legal highways.
“ ‘Together with all and singular the testaments, hereditaments and appurtenances thereunto belonging, or in anywise appertaining; and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, and all the estate, right, title and interest whatsoever of the said grantor, either in law or equity, 'of, in or to the above bargained premises.
“ ‘To have and to hold the said premises above described, with the appurtenances, unto the said grantee, and to its successors and assigns forever.
“ ‘And the said grantor, for his heirs, executors, and administrators, does covenant and agree to and with the said grantee, its successors and assigns, that at and until the- ensealing and delivery of these presents he is well seized of the -premises above conveyed as a good and indefeasible estate in fee simple, and has good right to bargain and sell the same in the manner and form as above written,' and that the same are free from all incumbrances, whatsoever.
“ ‘And, furthermore, I, the said grantor, do by these presents bind myself and my heirs forever to warrant and defend the above granted and bargained premises, to it, the said grantee, its successors and assigns, ágainst all lawful claims and demands whatsoever.
“ ‘And I, the said Helen A. Miller, do hereby remise, release, and forever quit-claim unto the said grantee, its successors and assigns, all my right and title of dower in the above described premises.
*506 “ ‘In witness whereof, the said grantors have hereunto set their hands and seals the day and year first above written.
“ ‘Joseph R. Miller,
“ ‘Helen A. Miller.
“ ‘Signed, sealed and delivered in presence of “ ‘J. B. Miller.
“ ‘H. G. Redington.
“ ‘State of Ohio, )
“ ‘County of Lorain, ) SS'
“ ‘On the 4th day of May, A. D. 1889, before me, a notary public in and for said county, came the above named Joseph R. Miller and Helen A. Miller, and acknowledged the above indenture to be their free act and deed, and desired that it might be so recorded.
“ ‘Witness my hand and seal the day and year above written.
“ ‘H. G. Redington,
“‘(Seal) Notary Public.’
“Eighth: The defendant, The Lake Shore & Michigan Southern Railway Company, accepted said deed, caused the same to be recorded in the records of deeds of Lorain county, Ohio (Vol. 63, page. 460), immediately took possession of said land, constructed said tracks thereon, and has continued to use and occupy said land from the said 3rd day of May, 1889, until the present time and is still occupying the same.
“That said railway company cut down its grade in front of said Miller’s house, caused said Miller *507 to use. a crossing about thirty (30) rods east of his former crossing for nearly one year.
“That said plaintiff Miller has fully performed all the conditions required of him to be performed by the terms of said contract set forth in said deed and still occupies said house as a dwelling for himself and family.
“Ninth: The defendant, The Lake Shore & Michigan Southern Railway Company, has continuously from the said 3rd day of May, 1889, up to a time just prior to the commencement of this action, recognized said contract as set forth in said deed and respected the rights of said plaintiff thereunder.
“Tenth: The defendant, The Lake Shore & Michigan Southern Railway Company, just prior to the commencement of this action, constructed two tracks, on the north side of its north main track east of said plaintiff’s residence and threatened to construct one or more tracks on the north side of the north main track as located on the 3rd day of May, 1889, between said north track and the plaintiff’s said residence; and upon the trial of this case the defendant admitted that unless restrained by an order of the court it intended and still intends to construct said track between said north main track and said plaintiff’s residence.
“That said defendant claims the right to construct other .tracks between its said main track and plaintiff’s house notwithstanding the contract entered into between it and said plaintiff on the 3rd day of May, 1889, which contract is embodied in said deed.
“Eleventh: The defendant, The Lake Shore & Michigan Southern Railway Companyj con *508 templates using the tracks so to be constructed on the north side of the main track as located on May 3rd, 1889, as part of a four-track railroad along and through said township and county.
“Twelfth: There are located on the south side of the defendant’s railroad, stone quarries from which are taken large quantities of sand stone which are shipped by car loads over said defendant’s railroad; that the defendant railway company deems it expedient and necessary to have the cars so loaded with stone to be shipped east on the south side of said railroad and to have the cars to be shipped westerly, on the north side of said railroad so that they may be picked up by passing trains. That formerly the east-bound trains on said railroad were run on the north main track of said railroad, and the west-bound trains were run on. the south main track of said railroad, but within the last two years said defendant company in order to conform to the general railway practice in the United States, has changed its direction of current of traffic so that the east-bound trains now run on the south main track and the west-bound trains run on the north main track, so that it has seemed expedient and necessary in the opinion of the defendant railway company to put sidings for cars going westerly on the north side of its main track between the present north main track of the defendant company and said Miller’s resk dence.
“Thirteenth: On the north side of the main tracks of The Lake Shore & Michigan Southern Railway Company, west of the residence of the plaintiff, there is land both on said defendant *509 railway company’s right of way and north of its ■right of way to construct other tracks which could be used for railroad purposes.
“Fourteenth: There is land on the south side of the present right of way of the said defendant railway company both east, west and opposite to said plaintiff’s residence upon which, tracks for the use of the railroad company could be constructed; but in order to connect with tracks already constructed and in use north of the north main track, and easterly of plaintiff’s said residence, the construction herein sought to be enjoined is necessary.
“Fifteenth: The north main track of the defendant company, as located on May 3, 1889, is and was sixty-six (66) feet south of the south line .of the plaintiff’s residence; that the usual distance from the center of one track to the center of another track is thirteen (13) feet and that for every additional track placed on the north side of the north rail of the defendant’s main track, as located on the 3rd day of May, 1889, will bring the north line of said additional'' track thirteen (13) feet nearer said plaintiff’s residence:
“Sixteenth: The north line of the right of way of the defendant company was, on the 3rd day of May, 1889, and ever since that time has been and is now seventeen arid one-half (17)4) feet south of the south line of the plaintiff’s dwelling house.”
By the acceptance of this deed described in this finding of facts and the entering into the possession of the premises conveyed thereby, the grantee, The Lake Shore & Michigan Southern Railway *510 Company, bound itself to the performance of each and every condition written therein, and it cannot now be permitted to retain the benefits thereof and reject the burdens imposed by these conditions.
•If the present needs of the railroad company require the doing of the things sought to be enjoined in this action, it cannot be permitted to do so in defiance of its positive contract. In other words, it will not be permitted to accept and retain the benefits conveyed by this deed and reject its burdens.
Therefore, the judgment of the circuit court is reversed and a perpetual injunction is allowed as prayed for in the amended petition until The Lake Shore & Michigan Southern Railway Company obtains the right by appropriation or otherwise to do and perform the things herein enjoined.

Judgment reversed and judgment for plaintiff in error.

Johnson, Donahue, Wanamaker and Wilkin, JJ., concur. Nichols, C. J., not participating.